UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

PATRICIA GLENN,

    Plaintiff,

v.                                                         CASE No. 8:10-CV-2026-T-30TGW

MICHAEL J. ASTRUE,
Commissioner of Social Security,

    Defendant.
_____

## REPORT AND RECOMMENDATION

The plaintiff in this case seeks judicial review of the denial of her claim for Social Security disability benefits.* Because the decision of the Commissioner of Social Security is seriously flawed by mistakes in the credibility determination, I recommend that the decision be reversed, and the matter remanded for further proceedings.

I.

The plaintiff, who was fifty-two years old at the time of the administrative hearing and who has an eighth-grade education, has worked

---

*This matter comes before the undersigned pursuant to the Standing Order of this court dated January 5, 1998. See also Local Rule 6.01(c)(21).

as a machining supervisor and pillow maker (Tr. 5, 18). She filed a claim for Social Security disability benefits, alleging that she became disabled due to discs bulging in her neck and lower back (Tr. 219). The claim was denied initially and upon reconsideration.

The plaintiff, at her request, then received a <u>de novo</u> hearing before an administrative law judge. The law judge found that the plaintiff had severe impairments of "cervical and lumbar degenerative disc disease with radiculopathies; and, moderate obesity" (Tr. 36). He concluded that these impairments restricted the plaintiff to a limited range of light work as follows (Tr. 37):

> The claimant can lift 20 pounds occasionally and ten pounds frequently, stand/walk for six hours in an eight-hour workday, and sit for six hours in an eight-hour workday. She would require a sit/stand option about every 30 minutes. She can never climb or work on ladders, ropes, or scaffolds. The claimant can only occasionally climb ramps and stairs and can only occasionally balance, stoop, kneel, crouch, and crawl. The ability to do fine/gross manipulations with the left upper extremity is limited to two-thirds of the average workday, and the claimant must avoid concentrated exposure to work at unprotected heights or hazardous machinery.

The law judge determined that these restrictions prevented the plaintiff from performing past work (Tr. 39). However, based upon the testimony of a vocational expert, the law judge found that there are jobs that exist in significant numbers in the national economy that the plaintiff can perform, such as mail clerk, small products assembler, and electronics worker (Tr. 40). Accordingly, the law judge decided that the plaintiff was not disabled (id.). The Appeals Council let the decision of the law judge stand as the final decision of the Commissioner.

II.

In order to be entitled to Social Security disability benefits, a claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which ... has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. 423(d)(1)(A). A "physical or mental impairment," under the terms of the Social Security Act, is one "that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. 423(d)(3).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence. 42 U.S.C. 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971), quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938). Under the substantial evidence test, "findings of fact made by administrative agencies ... may be reversed ... only when the record compels a reversal; the mere fact that the record may support a contrary conclusion is not enough to justify a reversal of the administrative findings." Adefemi v. Ashcroft, 386 F.3d 1022, 1027 (11th Cir. 2004)(en banc), cert. denied, 544 U.S. 1035 (2005).

It is, moreover, the function of the Commissioner, and not the courts, to resolve conflicts in the evidence and to assess the credibility of the witnesses. Grant v. Richardson, 445 F.2d 656 (5th Cir. 1971). Similarly, it is the responsibility of the Commissioner to draw inferences from the evidence, and those inferences are not to be overturned if they are supported by substantial evidence. Celebrezze v. O'Brient, 323 F.2d 989, 990 (5th Cir. 1963).

Therefore, in determining whether the Commissioner's decision is supported by substantial evidence, the court is not to reweigh the evidence, but is limited to determining whether the record as a whole contains sufficient evidence to permit a reasonable mind to conclude that the claimant is not disabled. However, the court, in its review, must satisfy itself that the proper legal standards were applied and legal requirements were met. Lamb v. Bowen, 847 F.2d 698, 701 (11th Cir. 1988).

III.

On June 4, 2005, the plaintiff tripped and fell at the Bayfront Medical Center (Tr. 309-31). The plaintiff was subsequently referred for MRIs of the lumbar and cervical spine, which revealed significant back and neck impairments, including disc herniation, bulging discs, and degenerative changes (Tr. 467-78). The plaintiff, however, returned to her job as a machining supervisor, although in a light duty capacity. On June 5, 2006, the plaintiff quit working because she could not tolerate standing due to neck and back pain (Tr. 8).

The law judge found the plaintiff to have a severe combination of impairments stemming from her back injury, but determined that the

plaintiff retained the capacity to perform light work with restrictions (Tr. 37). The plaintiff challenges the law judge's decision on four grounds. These challenges raise substantial questions concerning the accuracy and adequacy of the law judge's assessment. Because this is a close case, mistakes in the law judge's credibility determination warrant reversal.

The plaintiff contends that the law judge erred in considering the plaintiff's subjective complaints of pain (Doc. 20, p. 14). The Eleventh Circuit has established a standard for evaluating complaints of pain and other subjective complaints. Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005). As the court of appeals explained in Landry v. Heckler, 782 F.2d 1551, 1553 (11th Cir. 1986), the pain standard "required evidence of an underlying medical condition and (1) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (2) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain." If the law judge determines that, under this test, there is objectively determined medical evidence of an impairment which could reasonably be expected to produce disabling pain, the law judge "must evaluate the credibility of claimant's

testimony as to pain, and must express a reasonable basis for rejecting such testimony." Hand v. Heckler, 761 F.2d 1545, 1549 n.6 (11th Cir. 1985).

The plaintiff testified that, due to back pain, she can only sit for about fifteen to twenty minutes at a time and can only stand for about ten minutes (Tr. 15). She stated that she takes four different pain medications (Tr. 13), and that they make her drowsy (Tr. 15).

The law judge found that, although the plaintiff's impairments could reasonably be expected to produce the symptoms she alleged, the plaintiff's testimony regarding the intensity, persistence, and limiting effects of those symptoms was not credible to the extent they were inconsistent with the finding of the plaintiff's residual functional capacity (Tr. 38). In this regard, the law judge explained (id.):

> I first note that there is very little medical evidence to support an allegation that dates as far back as three plus years. The medical evidence itself does confirm injuries to the cervical and lumbar spines, but that being said the claimant was only on Ibuprofen for pain, the treatment sought was spotty at best, and neurological findings when treatment was obtained were normal (save for Dr. [Ladapo] Shyngle's one time reference to dysthesias in the feet).

> Moreover, I note the activities of daily living the claimant admitted to when she was examined, twice, by Dr. Shyngle. The tasks performed do not support the claimant's allegations of extreme pain, particularly tasks like caring for children, feeling well enough to go out with friends, and retaining adequate concentration to watch television.

These reasons are inaccurate and insufficient. To start with, the comment that the medical evidence does not support an allegation that dates back three plus years ignores the MRI findings of cervical and lumbar abnormalities from October 2005. Furthermore, consultative examinations in October 2006 and October 2007 showed reduced cervical and lumbar ranges of motions, as well as other symptoms (Tr. 571, 587). Significantly, the plaintiff does not have to establish that she was disabled for three plus years before the decision, as long as she shows that she was disabled within that period and the disability lasted, or was expected to last, for at least twelve months. Thus, the first sentence in the credibility determination provides no meaningful support to that finding.

The law judge next acknowledges that the medical evidence "does confirm injuries to the cervical and lumbar spines," but asserts that the plaintiff "was only on Ibuprofen for pain, and the treatment sought was spotty

at best, and neurological findings when treatment was obtained were normal" (Tr. 38). As indicated, the law judge was clearly mistaken in thinking that the plaintiff was only taking "over-the-counter Ibuprofen" (Tr. 37). Rather, the plaintiff testified that she was taking four medications for pain. This is an important difference. If the plaintiff were only taking an over-the-counter pain reliever, I would readily agree that this fact would seriously undercut a claim of disabling pain. On the other hand, the prescription of multiple pain medications strongly supports a claim of disabling pain, particularly since the medications caused drowsiness. With respect to that problem, moreover, the law judge did not consider the side effects of medications, as the regulations directed him to do, 20 C.F.R. 404.1529(c)(3)(iv), since he did not acknowledge prescription medications.

The law judge also considered that treatment was spotty at best. This factor supports a determination that the plaintiff is not suffering from disabling pain. However, the plaintiff saw an orthopedic surgeon, Dr. Paul J. Zak, after her fall, and he told her that surgery is indicated (Tr. 356). The plaintiff, however, decided to "hold off on surgery as long as possible" (Tr. 353). Under that circumstance, treatment options seem limited, so that a

"spotty" treatment history does not seem to carry great weight. However, it is noteworthy that the plaintiff underwent chiropractic treatment for a number of months after her fall.

Also carrying little weight is the fact that the neurological findings were generally normal. Orthopedic findings showed injuries to the cervical and lumbar spine, as the law judge acknowledged. Those injuries, according to an orthopedic surgeon, indicated that surgery was warranted.

The law judge, in addition, supported his credibility determination by activities of daily living the plaintiff stated to Dr. Shyngle, who examined the plaintiff twice. Thus, the law judge stated that "[t]he tasks performed do not support the claimant's allegations of extreme pain, particularly tasks like caring for children, feeling well enough to go out with friends, and retaining adequate concentration to watch television" (Tr. 38).

This statement contains another major mistake. Contrary to what the law judge thought, the plaintiff was not "caring for a young child at least three times a week" (Tr. 37). While the plaintiff apparently told Dr. Shyngle that she takes care of her son about three times a week, there is no indication what that care consists of. The plaintiff simply testified at the hearing that her

son is disabled and receives supplemental security income (Tr. 7). She did not state his age. However, the record contains three applications for benefits, the earliest being November 8, 2005, and all of them state that the plaintiff has no children under age 18 (Tr. 134, 137, 143).

If the plaintiff did take care of a young child at least three times a week, that would provide strong support for a finding that the plaintiff does not suffer from disabling pain. Such an activity can be strenuous and demanding. However, the record does not support a finding that the plaintiff took care of a young child. Moreover, there is no evidence indicating that she provided any care of a physical nature to her son, who was clearly over 18. Therefore, the law judge seriously erred in taking into consideration child care when evaluating the plaintiff's credibility.

Furthermore, in assessing the plaintiff's daily activities, the law judge has overstated what Dr. Shyngle reported. Thus, in the report of October 31, 2006, Dr. Shyngle stated (Tr. 570):

> The claimant cooks about three times a week. She takes care of her son about three times a week. She bathes and dresses daily. She watches TV, listens to the radio, goes out to eat, and socializes with friends.

In the report of October 15, 2007, he merely stated (Tr. 586):

> She cooks once or twice a week, launders once every two weeks, showers and dresses daily. Watches TV at home.

In particular, the more recent report of October 15, 2007, regarding activities of daily living does not provide any probative evidence supporting the law judge's credibility determination.

Additionally, the law judge did not consider that the plaintiff worked for one year after her injury. That fact seems to contradict the idea that the plaintiff is exaggerating her complaints of pain.

In sum, the law judge clearly erred in stating that the plaintiff was taking only over-the-counter medication and was engaging in child care. Those circumstances would be important factors in evaluating the plaintiff's subjective complaints of pain. If those circumstances were true, I would not hesitate to recommend affirming the law judge's credibility determination. Because they were not true, the law judge's credibility determination is fundamentally flawed. Moreover, none of the other circumstances mentioned by the law judge in his credibility determination overcome these critical mistakes. The plaintiff is entitled to a credibility determination that is

accurate and adequate. Accordingly, I recommend that, due to these errors, the decision be reversed and the matter remanded for further consideration.

As indicated, the plaintiff asserts other challenges to the law judge's decision. Although the plaintiff has pointed to other problematic aspects of the decision, it is unnecessary to determine whether the deficiencies constitute reversible error, in light of the previous conclusion that reversal is warranted.

The plaintiff contends that the law judge "completely ignored" Dr. Paul J. Zak's opinion that the plaintiff is a candidate for back surgery (Doc. 20, p. 9). In particular, the plaintiff contends that the law judge erred by failing to discuss Dr. Zak's opinion that her back problems "are severe enough to justify surgery" (id.). However, as the Commissioner correctly notes, the plaintiff has not explained how Dr. Zak's recommendation for back surgery is inconsistent with the law judge's determination that she is capable of performing a range of light work (Doc. 21, p. 5). While the law judge did not mention that the plaintiff was recommended for surgery, he did discuss Dr. Zak's findings (Tr. 37, 353). Furthermore, at the time Dr. Zak rendered his recommendations for surgery, the plaintiff was working and, in fact,

continued to work for a number of months. In all events, Dr. Zak's recommendation for surgery does not constitute an opinion setting forth a functional limitation. Consequently, Dr. Zak's offer of surgical treatment does not conflict with the law judge's opinion regarding the plaintiff's functional capacity.

The plaintiff argues also that the law judge "erred in accepting the opinion of the state agency over that of the treating and examining sources" (Doc. 20, p. 10). The plaintiff's primary complaint is that the law judge gave the most weight to state agency assessments over the opinions of a chiropractor and a two-time consultative examiner. In this case, the record contained three Physical Residual Functional Capacity Assessments filled out by state agency representatives (Tr. 399, 577, 593). However, only one of the state agency opinions was made by a reviewing doctor, Dr. Ronald Kline. Of the two remaining opinions, one was rendered by a "Single Decision Maker" named Robert Wismer and the other was unsigned. As the plaintiff points out, the record also contained statements about the plaintiff's functional capacity made by the plaintiff's chiropractor and a two-time consultative physician. There were no opinions regarding the plaintiff's functional

limitations from a treating physician. The law judge stated that he gave the most weight to Dr. Kline's and Wismer's assessments.

The plaintiff correctly asserts that Wismer is not a doctor and his opinion should have been disregarded by the law judge (Doc. 20, pp. 10-11). However, Dr. Kline's and Wismer's assessments were nearly identical.

The plaintiff contends that there is no basis for the law judge to credit the nonexamining reviewing physician's opinions over the chiropractor's opinion (id., p. 12). However, the chiropractor is not considered an "acceptable medical source" and, thus, the law judge could discount his opinion. See 20 C.F.R. 404.1513(a) (excluding chiropractors from the list of "acceptable medical sources"); Falge v. Apfel, 150 F.3d 1320, 1324 (11th Cir. 1998).

The plaintiff also challenges the law judge's decision to give greater weight to the nonexamining opinion over that of two-time consultative physician Dr. Shyngle. Dr. Shyngle's functional limitations were somewhat sketchy and thus not accepted by the law judge. In view of the conclusion that a remand is warranted, it is unnecessary to determine whether that finding resulted in reversible error.

The plaintiff contends, in addition, that the law judge erred by failing to find that her cardiovascular impairments constituted severe impairments (Doc. 20, p. 12). However, the plaintiff has not shown that she has any functional limitation resulting from a prior stroke.

The plaintiff did not testify at the administrative hearing that she suffered from stroke symptoms, such as arm weakness or slurred speech. The plaintiff, at the conclusion of the hearing, merely stated that she "forgot to mention that I had a stroke last year, 2008, a mini stroke" (Tr. 22). Importantly, her attorney did not ask if she experienced any limitations from the stroke. Under those circumstances, the condition is appropriately disregarded. Robinson v. Astrue, 365 Fed. Appx. 993, 995 (11th Cir. 2010) (unpub. dec.)(the law judge was not under an obligation to investigate a claim that is not presented in the application for disability benefits or through hearing testimony); Street v. Barnhart, 133 Fed. Appx. 621, 627 (11th Cir. 2005 (unpub. dec.). Regardless, on remand, the plaintiff can present evidence of functional limitations from a cardiovascular problem, if, in fact, she suffers from any.

IV.

For the foregoing reasons, the decision of the Commissioner contains reversible error with respect to the credibility determination. I, therefore, recommend that the decision be reversed, and the matter remanded for further proceedings.

Respectfully submitted,

THOMAS G. WILSON
UNITED STATES MAGISTRATE JUDGE

DATED: OCTOBER 6, 2011

NOTICE TO PARTIES

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen days from the date of its service shall bar an aggrieved party from attacking the factual findings on appeal. 28 U.S.C. 636(b)(1).